**In the Matter of the Petition of B.E.K., Petitioner-Appellant,**

**for the Adoption of W.S.H., V, a minor, and concerning W.S.H., IV, Respondent-Appellee.**

No. 83CA0337.

Colorado Court of Appeals, Div. II.

March 8, 1984.

Rehearing Denied May 3, 1984.

John Fogerty Winston & Associates, P.C., John Fogerty Winston, Denver, for petitioner-appellant.

Barbara Quade, Guardian Ad Litem, Denver, Charles L. Sharp, Jr., Boulder, for respondent-appellee.

KELLY, Judge.

Petitioner, B.E.K., appeals the trial court's judgment denying his petition for

adoption of his step-child, W.S.H., V, born to his present wife, D.A.K., and W.S.H., IV, the respondent father. In a previous opinion not selected for publication, we affirmed the trial court's ruling that the evidence would not support the finding of abandonment. We also remanded the case to the trial court for additional findings on the issue whether the father had failed to support the child without cause. We agree with the petitioner's argument that the trial court erred in finding that the father's failure to provide support for a period of more than one year was with cause. *See* § 19–4–107(1)(e)(II), C.R.S.1973 (1978 Repl. Vol. 8). Thus, we reverse.

The mother and father were married in 1972, separated in 1978, and divorced in Utah in October 1980. Although the father was not present at the final divorce hearing, he was ordered by the Utah court to pay monthly child support. It is uncontroverted that the father made no payments of any kind towards support of his child during the two-year period immediately preceding the commencement of this action for adoption.

During the marriage of the mother and father, the latter worked as a uranium miner, earning approximately $18,000 per year. After their separation, but before the entry of the divorce decree, the father became despondent about his personal life and about his career as a miner, and voluntarily left mining work to become an itinerant worker. He was employed thereafter in Idaho, Washington, Oregon, and Colorado, holding numerous jobs in which his earnings and expenses varied widely.

From November 1978 until April 1979, while he was employed as a miner, the father paid a total of $800 in support. From May 1979 to March 1980, the father's expenses exceeded his income. From June 1980 until November 1981, however, the father was employed in Oregon in a radio station and as an actor in a program supported by a CETA grant. He testified that, in this employment, he not only made expenses but also was able to save money in anticipation of the expected termination of the CETA grant. From December 1981 until December 1982, the father was employed in Boulder, Colorado, as a shipping clerk, earning a net monthly income of $650. He testified that his monthly expenses were $500.

In ruling that there was cause for the father's failure to support, the trial court stated:

"Can I find failure to support without cause? ... What is cause? Cause is not having enough money, and [W.S.H., IV] has not had enough money. I would say that he certainly could have done better. Because, instead of fixing his car or besides fixing his car, he could have sent $10 here, $20 here. He could have shown a better effort towards support: I am not happy about his attitude about that.

"On the other hand, it's very clear to the Court that he has not been well, and I don't think he's well yet. I think he's getting there. I think he's better, but I think he's still depressed because I perceived depression from the stand. And I think that—that his attitude about child support could use some honing, but he has not supported, and I can't make a finding that he has not supported without cause. He's had cause."

Being unable to determine from these statements the underlying basis for the trial court's conclusion that the father had cause for failure to support, we remanded the case to the trial court for findings of more specificity. The case has now been recertified to us for our further consideration based on the following clarification of findings by the trial court:

"The Court observed the parties during almost two days of trial. During the proceedings, the Court was impressed that the Respondent Father was very depressed and that his depression rendered him incapable of working or parenting his son. The Court inquired regarding this depression because it was evident in the Respondent's demeanor. Although the Respondent assured the Court that there was no psychiatric evidence of the depression, this Court was not convinced. The totality of the testi-

mony convinced this Court that the Respondent did not have the energy either to support his child or to adequately support himself. Indeed, his dependence on his family (residence with parents and other family members) supported this contention.

"The facts in this case are distinguishable from *Stjernholm v. Mazaheri,* 180 Colo. 352, 506 P.2d 155 (1973), in which the acts were willful. It appeared to this Court, and this Court so finds, that the cause of the nonsupport was the paralyzing effects of Respondent's mental state. It was this Court's finding and clear impression that the Respondent's failure to support was not willful."

We are aware of the rule that the failure to provide reasonable support is a question of fact to be determined by the trial court on a case-by-case basis. *In re Petition of F.J.H.,* 628 P.2d 159 (Colo.App.1981). We also recognize that the discretionary authority of the trial court in this area is broad, and its determinations are not to be disturbed on review if there is evidence to support them. *In re Petition of J.A.A.,* 618 P.2d 742 (Colo.App.1980). However, the findings must bear some relationship to the evidence presented in the trial court, and this record does not support these findings.

The record shows that the father's emotional breakdown and brief hospitalization occurred in 1979, after the parents' separation, but before the divorce was final. This was the only period covered by the testimony during which the father provided any financial support for the child. There is not a particle of evidence to establish that the father suffered from any lingering mental depression. Further, there was neither expert nor lay testimony that the father lacked "the energy either to support his child or to adequately support himself," and the reasons for the father's choice of residences were unexplored in the testimony. Moreover, the father has not claimed either at trial or on appeal that his earlier depression was a causative factor in his failure to support his child.

A parent may not, with impunity, shift to another the parental responsibility for providing support and nurture to a child. While permanent deprivation of parental rights which results from a stepparent adoption decree is indeed harsh, thereby requiring strict adherence to statutory requirements, a parent must, in order to preserve parental rights, give due attention to parental responsibilities.

While it may be that mental depression would, if sufficiently debilitating, constitute cause for failure to support, there must be some evidentiary nexus between the depression and the lack of support. Here, even if we assume that the father suffered from some sort of depression in the two-year period prior to these proceedings, there is no evidentiary basis for the conclusion that the father's mental condition was so debilitating as to preclude contribution of any support whatsoever. Indeed, his record of gainful employment negates any such conclusion.

The judgment is reversed and the cause is remanded for further proceedings.

SMITH and VAN CISE, JJ., concur.